UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 09-CV-60197-DIMITROULEAS/SNOW

STEVEN GRINGAUZ, and SUSAN GRINGAUZ,
individually, and on behalf of their minor children,
JORDAN GRINGAUZ, SCOTT GRINGAUZ and
STACEY L. GRINGAUZ, and on behalf of others
similarly situated,

    Plaintiffs,
vs.

THE SHERWIN-WILLIAMS COMPANY,

    Defendant.
_____/

## THE SHERWIN-WILLIAMS COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

AND NOW, comes the Defendant, THE SHERWIN-WILLIAMS COMPANY ("Sherwin Williams"), by and through its undersigned counsel, and hereby submits the following Memorandum of Law in Support of Motion for Summary Judgment as follows:

## STATEMENT OF MATERIAL FACTS

1. On February 2, 2009, Plaintiffs filed a Complaint in the Seventeenth Judicial Circuit, In and For Broward County, Florida, Case No. CACE 09006287 against Sherwin-Williams, alleging negligence, strict liability and a statutory violation of F.S. § 501.201, *et. seq*. (FDUPTA). (Compl., Ex. "A")

2. On February 6, 2009, Defendant filed a Notice of Removal with this Court pursuant to 28 U.S.C. § 1332 on the grounds of diversity jurisdiction.

3. Plaintiffs subsequently filed an Amended Complaint to which Defendant filed its Answer and Affirmative Defenses on June 4, 2009.

4.      Plaintiffs filed a Second Amended Complaint on November 25, 2009. (Sec. Am. Compl., Ex. "B")  The essence of Plaintiffs' claims is that the builder of their home used an exterior Sherwin-Williams latex paint (Superpaint® Exterior Latex High Gloss)(hereinafter "the subject paint") on certain areas of the interior of their house. (Sec. Am. Compl., ¶ 1)  Plaintiffs contend that they have suffered economic losses and personal injuries from being exposed to the exterior paint.  (Sec. Am. Compl., ¶ 3).

5.      Plaintiffs include Mr. and Mrs. Gringauz and their three minor children. Plaintiffs' Complaints allege that all five Plaintiffs have suffered personal injuries from exposure to the subject paint.  Yet, none of the Complaints filed by the Plaintiffs have contained any reference whatsoever to specific injuries allegedly caused by the subject paint.  Importantly, for purposes of this Motion, even after deposing Plaintiffs' experts, there is still no evidence in this record that any of the five Plaintiffs were injured as a result of the builder applying the subject paint to certain limited interior areas of the Plaintiffs' home.  In fact, Plaintiffs withdrew any claims of Mr. and Mrs. Gringauz via the March 9, 2010 email correspondence wherein it was stated Plaintiffs ". . . will not produce any evidence re injuries for Mr. and Mrs. Gringauz."

6.      On March 31, 2009, the parties filed their Joint Scheduling Conference and Discovery Report with the Court.  Under section (d)(5)(i) of this Report regarding Expert Discovery, the parties agreed that Plaintiffs were to disclose the identity of their expert witness(es) by September 7, 2009.  It was also agreed that Plaintiffs were to produce any expert report by September 21, 2009 and that Plaintiffs were to make any expert available for deposition by October 12, 2009.

7.      On April 1, 2009, the court issued its Order Setting Trial and Discovery that included deadlines for expert discovery.

8. As the Court is aware from previous Motions which Defendant was forced to file, Plaintiffs failed to disclose the identity of any expert by the September 7, 2009 deadline. Indeed, to date, Plaintiffs have never filed their Rule 26 expert disclosures and reports.

9. The record before the Court is clear and there is no dispute that in the eight months that have passed since the deadline for Plaintiffs to submit their Rule 26 expert disclosures and reports that Plaintiffs have never identified any medical or causation witness who will opine that any of the five Plaintiffs suffered harm as a result of the subject paint.

10. While Plaintiffs never filed Rule 26 expert disclosures, Plaintiffs did produce a report from Scott A. O'Connor. Plaintiffs have conceded that Mr. O'Connor is the sole expert upon whom they are relying to support their personal injury claims. (Plaintiffs' correspondence dated October 5, 2009, Ex. "C"). Mr. O'Connor's August 11, 2009 report (which was not provided to Sherwin-Williams until September 8, 2009 as part of a purported settlement letter) does not contain any opinions on medical causation, exposure or dose. (O'Connor Report, Ex. "D"; Plaintiffs' correspondence dated September 8, 2009, Ex. "E") This is not surprising as Mr. O'Connor is not a doctor and is not qualified to opine on causation – a fact he readily admits.

11. Mr. O'Connor was deposed on November 24, 2009.[1] Mr. O'Connor is a concrete contractor. Why he was retained in a personal injury case is not clear. He is not a toxicologist, epidemiologist, industrial hygienist, or medical doctor. (O'Connor Dep, pp. 33-37, 42-43, Ex. "H"). In other words, he is not qualified to offer opinions related to exposure or causation. Indeed, Mr' O'Connor did not give any testimony on causation. Mr. O'Connor testified that he does not intend to offer any opinions on dose or exposure. (O'Connor Dep. pp.35-36) Mr.

---

[1] The deposition transcripts of both O'Conner and Dr. Sirota are being filed separately by Defendant.

3

O'Connor did not conduct any air sampling in Plaintiffs' home and could not provide any testimony as to what chemical(s) Plaintiffs' were exposed to from the subject paint, or from any of the myriad substances found in newly constructed homes. (O'Connor Dep. pp. 137-138, 144) Specifically, Mr. O'Connor could not provide any testimony as to whether Plaintiffs were exposed to any vapors or chemicals from the subject paint. (O'Connor Dep. p. 146)

12. Plaintiffs have never disclosed any medical doctor as being qualified to opine that any yet to be identified alleged injuries suffered by Mr. or Mrs. Gringauz or their three children are causally related to the Sherwin-Williams paint at issue. Initially, Plaintiffs' counsel indicated that the Plaintiffs had taken Mr. O'Connor's report to their treating physicians and it was represented to Sherwin-Williams that "[t]heir doctors are willing to testify to a correlation and relationship between some of the more pronounced ailments their children are experiencing and the findings of their expert." (See correspondence from Plaintiffs' counsel dated September 8, 2009, Ex. "D"). Plaintiffs then informed counsel for Sherwin-Williams that one of Mrs. Gringauz' treating doctors, Dr. Weiner, would be offered to opine on causation. Subsequently, Plaintiffs' counsel indicated that Dr. Weiner would not be called by Plaintiffs. (See email correspondence from Plaintiffs' counsel dated March 9, 2010, Ex. "F"). Plaintiffs' counsel then suggested that another doctor who has seen Mrs. Gringauz, Dr. Tartell[2], would offer opinions in this case. However, Plaintiffs' counsel once again changes course and informed counsel for Sherwin-Williams that Dr. Tartell would not be offered. At that time Plaintiffs advised counsel for Sherwin Williams that they were not producing Dr. Tartell for deposition as he would not offer opinions or testify at trial.

---

[2] Dr. Tartell is a hockey doctor.

13. Thus, to date, Plaintiffs have not come forward with any expert who can support the allegation that either Mr. or Mrs. Gringauz was somehow harmed by a limited amount of an exterior water based paint being applied to trim in their home. As a result, Plaintiffs have withdrawn the claims of Mr. and Mrs. Gringauz. (See email correspondence dated March 9, 2010, Ex. "G")

14. While Plaintiffs failed to disclose any medical doctors as experts, Plaintiffs did produce the children's pediatrician, Dr. Lisa Sirota, for deposition on April 7, 2010. Dr. Sirota has been the treating pediatrician for all three Gringauz children since birth. Again, as noted above, it was represented to Sherwin-Williams by Plaintiffs' counsel that the children's doctor would be able to tie the children's symptoms to the subject paint being applied in their home. Dr. Sirota, however, did <u>not</u> give any testimony regarding medical causation. In fact, she testified that she has no opinions relevant to the case and was not even asked to serve as an expert. (Sirota Dep. pp. 22-23, 25, Ex. "I")

15. Subsequent to Mr. O'Connor's deposition, Plaintiffs' propounded interrogatories and requests for production on Sherwin-Williams on December 23, 2009. Plaintiffs' discovery inquired about Superpaint® Exterior Latex *Flat* paint. However, this product was not used in Plaintiffs' home or evaluated by their expert(s). That is, both Mr. O'Connor and Plaintiffs' counsel had previously indicated that the paint applied to the interior of the Plaintiffs' home was Superpaint® Exterior Latex *High Gloss* paint, not Flat paint. Defendant timely filed objections and responses. Without seeking leave, Plaintiffs recently served new interrogatories and

requests[3] which changed the definition of "paint" or "product" to Sherwin-Williams Superpaint® Exterior High Gloss Latex.[4]

## ISSUE

Should Defendant's Motion for Summary Judgment be granted?

**Suggested Answer:   YES.**

## LEGAL ARGUMENT

### I.   Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine issue as to any material fact and that moving party is entitled to a judgment as a matter of law. *Reynard v. NEC Corp.* 887 F.Supp. 1500, 1502 (M.D.Fla. 1995); Fed. R. Civ. P. 56(c).  The moving party must "either point out to the Court specific portions of the record which show that the nonmoving party cannot prevail at trial, or introduce affirmative evidence negating the opposing party's case."  *Reynard*, 887 F.Supp. at 1502, *citing United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991).

When the moving party meets its initial burden, the nonmoving party must then "go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial" that precludes summary judgment.  *Alvarez v. General Wire Spring Company*, 2009 WL 248264 at *3 (M.D.Fla. Feb. 1, 2009).  However, "if the non-movant's response consist of nothing 'more

---

[3] Pursuant to the Fed. R. Civ. P. 33(a)(1), Plaintiffs are limited to 25 interrogatories including subparts. Plaintiffs went over this limit in serving a new set of interrogatories, without leave, to change the definition of "paint" or "product" to coincide with their expert's report, which was the first time Sherwin-Williams SuperPaint Exterior High Gloss Latex Enamel was identified.

[4] Thereafter, Defendant filed a motion for an extension to respond to Plaintiffs' discovery requests.  The parties agreed that Defendant will produce their documents and responses to the new discovery requests regarding the high gloss product by May 14, 2010.

than a repetition of his conclusional allegations,' summary judgment is not only proper, but required." *Id.* at *4, *quoting Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## II.  Summary Judgment is Warranted where Plaintiffs Have Not, and Cannot, Meet Their Burden of Proof on Causation

Plaintiffs' claims against Sherwin Williams fail as a matter of law for one simple, yet critical, reason – they cannot establish causation. In toxic tort cases, plaintiffs bear the evidentiary burden of proving both general causation – whether a toxin is capable of causing the injury alleged, and specific causation. *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 691 (N.D. Ga. 2006); *see also Craig v. Orkin Exterminating Co., Inc.*, 2000 U.S. Dist. LEXIS 19240 at *18 (S.D. Fla. Nov. 21, 2000). Specific causation requires special attention to the dose-response relationship. The dose-response relationship is "a relationship in which a change in the amount, intensity, or duration of exposure to an agent is associated with a change – either an increase or decrease – in the risk of disease." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241-42 (11th Cir. 2005).

To prove general and specific causation requires expert testimony. *Id.* at 1237. Expert testimony in the scientific fields of epidemiology or toxicology is generally considered the best evidence of causation in toxic tort cases. *Evans v. Matrixx Initiatives, Inc.*, 2009 U.S. Dist. LEXIS 88224 at *26 (M.D. Fla. Feb. 18, 2009). If a plaintiff is "unable to establish general causation, the need to consider whether the plaintiff has established specific causation disappears. The first is necessary to the second." *Sutherland v. Matrixx Initiatives, Inc.*, 2006 U.S. Dist. LEXIS 96652 at *36 (N.D. Ala. Nov. 7, 2006). Courts have long held that "scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the Plaintiff was exposed to such quantities, are minimal facts necessary to sustain the Plaintiff's burden in a toxic tort case." *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1997). In order to

7

demonstrate an association between exposure and risk of disease, "the [Plaintiff's] expert should offer an opinion as to whether the dose to which the Plaintiff was exposed is sufficient to cause the disease." Federal Judicial Center, *Reference Manual on Scientific Evidence* (1994), p. 201.

Courts routinely exclude experts in similar situations holding that the opinions of the plaintiff's expert cannot be considered the product of reliable, scientific methodology, but rather, may only be characterized as inadmissible, subjective and unsupported speculation. See *Wintz v. Northrop Corp.*, 110 F.3d 508, 513-514 (7th Cir. 1997) (Opinions on causation were inadmissible where the expert did not know how frequently, in what quantity and in what form the Plaintiff was exposed to a particular chemical); *Allen v. Pennsylvania Eng'g Corp.*, supra. (The lack of direct evidence of the level of Plaintiff's exposure to a specific chemical provided grounds to exclude expert opinions on causation).

In the instant case, causation is an essential element to Plaintiffs' claims, i.e., that exposure to Sherwin-Williams exterior paint caused their alleged injuries. Whether Plaintiffs have any material expert evidence to support their theory of causation, therefore, is a material issue for summary judgment. Plaintiffs' have identified one expert in this matter, a concrete contractor, Scott A. O'Connor. Plaintiffs have also provided the children's treating pediatrician, Dr. Lisa Sirota, for deposition. Neither Mr. O'Connor nor Dr. Sirota have opinions on causation nor is either even qualified to offer any such opinions. Without proof of causation, Plaintiffs cannot prove an essential element of their claims. Therefore, Sherwin Williams is entitled to summary judgment as a matter of law.

    **A.**    **Scott A. O'Connor's Testimony Does Not Satisfy Plaintiffs' Burden of Proof on Causation**

A review of Mr. O'Connor's report and deposition testimony demonstrate that he is neither qualified to address causation and, in fact, has not formed any opinion on causation. It is

8

well established that in a toxic tort case, in regard to causation, a "proposed expert should be able to demonstrate an understanding of the discipline of toxicology…." *Craig, supra* at *7. However, Mr. O'Connor is admittedly not a toxicologist, an epidemiologist, an industrial hygienist, a medical doctor, a chemist, or a safety professional. (O'Connor Dep., pp. 33-37, 42-43) He is a concrete contractor. Because Mr. O'Connor is not qualified to testify on the issue of causation, he has no opinion as to whether Plaintiffs were injured as a result of exposure to the Sherwin-Williams paint at issue and Mr. O'Connor's work in this case does not assist the Plaintiffs in meeting their burden of proof.

It is well established in the Eleventh Circuit that expert testimony is inadmissible where the witness "offered no testimony about the dose of the substance required to injure Plaintiff or anyone else. The witness could not say how much is too much…His lack of testimony about the dose-response relationship…leaves a muddle of ambiguity that undermines his opinions." *McClain,* 401 F.3d at 1241. It is no different with Mr. O'Connor's testimony. Mr. O'Connor admitted that he did not intend to offer any opinions in this case with regard to the issues of dose or exposure. (O'Connor Dep. pp. 35-36) Plaintiffs' allege they were harmed by breathing in vapors from Sherwin Williams' exterior paint. However, Mr. O'Connor could not identify the chemical(s) Plaintiffs' may have been exposed to because he did not conduct any air sampling at Plaintiffs' home. (O'Connor Dep. pp. 144, 146) More importantly, Mr. O'Connor could not state whether Plaintiffs' were exposed to any chemical(s) from a Sherwin-Williams product. (O'Connor Dep. p. 146)

Mr. O'Connor's testimony does not meet the requisite "expert" testimony required in toxic tort cases. The foundation of his opinions is woefully deficient and not relevant to prove

causation. Thus, Plaintiffs' cannot satisfy their burden of proof with respect to causation to overcome summary judgment.

### B.  Dr. Lisa Sirota's Testimony Does Not Establish Causation

Since causation is an essential element to Plaintiffs' claims in this case, "medical expert testimony is essential to prove causation." *Leathers, supra, at* 701. The only medical witness offered by Plaintiffs is Dr. Sirota who is the pediatrician for the Gringauz children. Although, Dr. Sirota is a medical doctor, she is not an "expert" to prove causation. In fact, Dr. Sirota, was not asked to serve as an expert witness in this case. (Sirota Dep. p. 23) Moreover, Dr. Sirota testified that she had no relevant opinions about this case, including causation, to support Plaintiffs' claims. (Sirota Dep. p. 22, 25) Dr. Sirota has expressed no opinion whatsoever, let alone an opinion on causation within reasonable medical certainty supporting Plaintiffs' claims.

It is undisputed that Plaintiffs have never filed Rule 26 expert disclosures in this case. While they offered a report from a concrete contractor and a deposition from their children's pediatrician, neither of these steps lays the proper expert foundation needed for the Plaintiffs' case to proceed. Their testimony does not establish a material issue of fact with regard to Plaintiffs' claims nor does it satisfy Plaintiffs' burden of proof. As such, summary judgment is warranted as a matter of law.

## **CONCLUSION**

WHEREFORE, for the reasons stated, Defendant The Sherwin Williams Company respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiffs' claims against it.

Respectfully submitted,

s/ Julie S. Sneed
Kenneth L. Bednar, FBN: 557986
kenneth.bednar@fowlerwhite.com
Julie S. Sneed, FBN 51594
jsneed@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
1200 East Las Olas Blvd, Suite 400
Fort Lauderdale, FL 33301
Tel: 954-703-3900
Fax: 954-703-3939

And

James R. Miller, *Pro Hac Vice*
JMiller@dmclaw.com
Christopher D. Stofko, *Pro Hac Vice*
CStofko@dmclaw.com
Dickie McCamey & Chilcote
2 PPG Place, Suite 400
Pittsburgh, PA 15222
Tel: 412-281-7272
Fax: 412-392-5367

Attorneys for Defendant Sherwin-Williams

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of May, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel:

>Guy M. Shir, Esq.
>GShir@hahanshir.com
>Patrick Dervishi
>PDervishi@kahanshir.com
>Kahan Shir, P.L.
>1800 NW Corporate Boulevard, Suite 200
>Boca Raton, Florida 33431
>561-999-5999

>>s/ Julie S. Sneed
>>Julie S. Sneed, FBN 051594

42718663v1